WILLIAM A. PHELPS, Appellant, *v.* BRADNER SMITH, Appellee.

APPEAL FROM JO-DAVIES.

The purchaser from a person entitled to a preëmption, under the act of Congress of the 2d of February, 1829, and the act amendatory thereto, is as to the land purchased, the " legal representative " of the person entitled to the preëmption.

THIS was an action of ejectment brought by Phelps against Smith in the Jo-Davies Circuit Court, to recover the undivided half of lots eight and nine in the town of Galena. Plea, not guilty; verdict, not guilty. Cause heard before SHELDON, Judge, and a jury, at March term, 1854, of the Jo-Davies circuit court.

M. Y. JOHNSON and J. P. STEVENS, for appellant.

HIGGINS and STROTHER, for appellee.

CATON, J. Guyard & Morehouse made improvements upon the lots in question in 1828, which entitled them to a preëmption thereto, under the act of 2d of February, 1829, and the act amendatory thereto. In November, 1829, Guyard transferred by quitclaim deed his interest in the premises to the plaintiff Phelps. Subsequently Guyard disappeared and was supposed to be dead, and Morehouse took out letters of administration upon his estate. Afterwards Morehouse appeared before the commissioners appointed under the act of congress to decide

claims for preëmptions, and claimed a preëmption in his own right as to an undivided half of the lots, and in behalf of the legal representatives of Guyard as to the other undivided half. The commissioners decided " that the legal representatives of Robert P. Guyard are entitled to a preëmption of one undivided half of lots number eight and nine, and Dickenson B. Morehouse to the other half of said lots." In conformity to this decision and record a preëmption certificate was granted, the lands entered, and a patent issued. The evidence does not show that Phelps had any thing to do with the proceedings before the commissioners, or even that he knew of those proceedings until after the patent issued. Phelps now claims to hold the undivided half of the lots under the patent, as the legal representative of Guyard, while Morehouse insists that he presented and prosecuted the claim before the commissioners as the administrator of Guyard, and that the commissioners designed and intended to award it to him as administrator, by the description of legal representative of Guyard. And the jury were instructed that if such was the intention of the commissioners when the preëmption was allowed, that the plaintiff could not recover. The circuit court substantially held, that the grant to " the legal representatives " of Guyard conveyed the land to the person whom the commissioners supposed was the legal representative, and who they actually designed should take the land, whether such person was in fact and in law the true legal representative of Guyard or not. This, in fact, presents the only important question in the case.

By the act of congress the grant of the right of preëmption is to " each and every person, or his, her, or their legal representative or representatives, who shall heretofore have obtained from the agent of the United States a permit to occupy any lot or lots in the said town of Galena, or who shall have actually occupied and improved any lot or lots in said town," &c. In the case of Delauney *v.* Burnet, 4 Gilm. 454, this court held, that a purchaser from a person entitled to a preëmption, of his interest in the land or right of preëmption, is as to such land the legal representative of the person entitled to the preëmption within the meaning of the act of congress, and as such would take the land directly as grantee by the description of legal representative of Guyard. It is not now necessary to repeat the reasons which led us to this conclusion at that time, more than to quote a single passage from the opinion of the court. In that case, the claimant had purchased the preëmption right of the same Guyard, from whom the present plaintiff purchased. The

cases are, therefore, precisely alike. The court said : " Guyard at the time of his death, had no estate, interest, or property in the right or claim to the lot in controversy. He had parted with the whole in 1829. In 1838 this right, which had been thus sold and transferred by him, and in which he had no interest at his death, ripened into a legal title in favor of his heirs or administrators, not because they are the real owners of the property, or can legally succeed to a right or claim which their ancestor or intestate had not at his death, but simply for the reason that the grant is to Guyard's 'legal representatives.'" Nothing can be more clear to my mind than that the term "legal representative" as used in this law was designed to describe a party in interest whose identity was uncertain, and that by that description it was designed to designate the person or party who had succeeded to the right of the deceased, whether by purchase, or descent, or operation of law. It means the party who has the right to and who does legally represent the interest which was once vested in the deceased, and by virtue of which right alone the law of congress authorizes the land to be entered. It was the design of the law that no one should be permitted to enter the land except the party who had received the permit or had made the improvement, or one who had in some legal mode succeeded to the right of such party. If any others were allowed to enter it, it was a fraud upon the law. Such is the undoubted meaning of the act of congress, and it is equally clear that the phrase "legal representative" must receive the same construction when used in the judgment or certificate of the commissioners, and in the patent issued thereon. It may be true that the commissioners had the right to award the preëmption to a particular person by name, as the legal representative of Guyard; and that had the patent issued to such person by name, it would have been conclusive, at least in a court of law, although another might be able to show that he was in fact the true legal representative. Indeed, the presumption must be, that whenever it was satisfactorily shown who was in truth the legal representative of the deceased, the certificate would be granted directly to such person. And, whenever the more descriptive term "legal representative" was used, it shows that the commissioners were in doubt as to who in truth held the right which had once existed in the deceased, or at least that they did not choose to determine that question, but rather chose to leave it open to be determined by further investigation by courts of law. And such, indeed, was the only prudent course for the commissioners to pursue, for it was well

known then, as it is manifest now, that claims were likely to be preferred and prosecuted by those who would apparently succeed to the rights of the deceased, as the heirs, executors, or administrators, in total ignorance of the fact, that the deceased had, in his lifetime, granted away to others the very rights which they were claiming to exercise. Although the commissioners may have supposed, and Morehouse himself may have believed, that he, as administrator, was, in truth, the legal representative of Guyard, as respects this right of preëmption; yet if he was not in truth such legal representative, such supposition or belief could not change the fact or the law, and make him the legal representative, and enable him, in truth, a stranger, to take the grant by such designation. Suppose the law had authorized it, and the certificate had been given and the patent issued to the "heirs at law of Guyard," would proof that any stranger had appeared before the commissioners and prosecuted the claim, as heir, enable him to take the grant by that designation, simply because the commissioners supposed he was the heir, and as such was entitled to the right? It is the patent which grants the land, and that was the act of the government, and not of the commissioners. And we cannot presume that the government had any intent in issuing the patent, beyond that which is expressed on its face. The grántee is not named, but is described in the patent, and he, and he alone, who bears and can maintain that description, can take by the grant. The grant is to the legal representatives of Robert P. Guyard, and it would be strange, indeed, if the one who is such representative should not be allowed to take the thing granted, but that it should go to one who, as a matter of law and of fact, is not the legal representative to whom the conveyance runs.

We think the court erred in instructing the jury, that if "Morehouse, as the administrator of the said Guyard, claimed the said lots before the said board of commissioners for the estate of the said Guyard alone, and not for Phelps, the plaintiff, or any other representatives of Guyard, and that the attention of the board was never in any manner called to Phelps's claim, or that of any other legal representative, then the jury ought to find the defendant not guilty." If Phelps is the legal representative of Guyard, as to his former interests in these lots, then Morehouse, as administrator, cannot be; and the patent says, and the law says, that the legal representative shall take by the grant, whether the commissioners knew who that legal representative was, or not. It is certain that the commissioners did not decide, and the patent does not determine, who was the legal

representative, but that question is clearly left open to be determined by proof upon settled legal principles.

The judgment of the circuit court must be reversed, and the cause remanded.

*Judgment reversed.*