Filed Jan. 28, 1892.

———◆———

## No. 15,205.

## EWING v. JONES.

TRUST.— *Construction of Deed.* — *Revocation of Trust.* — *Meaning of Term "Legal Representative," as Used in Deed.*—*Testamentary Deed.*—The owner of land, for a recited money consideration, executed to a grantee a quitclaim deed, to have and "to hold the same to the" grantee, "in trust, for the uses and purposes following:" (1) "The trustee, as aforesaid, shall sell and convey all such part or parts of the real estate here-

Ewing v. Jones.

by conveyed as to him shall seem most advantageous for the interest of the trust hereby created, and the proceeds thereof to invest for the same purposes for which this trust is created, to expend the same in improving such of the property hereby conveyed as the said trustee shall deem most advisable, and for the purpose of creating an income therefrom ; (2) that of the income and profits arising under this trust a reasonable sum, such as said trustee shall deem to be sufficient, shall be expended for the maintenance of the grantor, and the remainder, if any, after paying taxes, insurance and necessary expenses, shall be expended for the benefit of the trust, when and at such times as the trustee shall think best ; " (3) that upon the death of the said grantor the property hereby placed in trust shall descend to the legal representatives of the said grantor, " provided, however, that " the grantor's adopted brother " shall, under no circumstances whatever, inherit or be entitled to any part or parcel thereof."

*Held*, that the legal title vested in the trustee, and that he, with the consent of the grantor, could not revoke the trust.

*Held*, also, that the term " legal representative," as thus used, meant the heirs of the grantor.

*Held*, further, that the instrument was not a testamentary deed.

From the Vanderburgh Circuit Court.

*T. J. Walker, F. Ullman* and *R. E. Pendarvis,* for appellant.

*J. E. Iglehart* and *E. Taylor,* for appellee.

ELLIOTT, C. J.—The question in this case is, who owns the real estate in controversy ? The question as it is presented by the record is to be solved by determining the meaning and effect of an instrument executed by George W. Ewing, Junior, to George W. Ewing, Senior, on the 31st day of December, 1863. The introductory clause of the instrument reads as follows : " This indenture witnesseth that George W. Ewing, Junior, a devisee of William G. Ewing, deceased, late of Allen county, Indiana, in consideration of six hundred dollars, and other good and sufficient consideration, does by these presents give, grant, bargain and sell to George W. Ewing of Cook county, Illinois, the following described real estate." This clause is followed by a specific description of a large number of parcels of real

estate. Following the description of the property are these. provisions: "To have and to hold the same to the said George W. Ewing, in trust, for the uses and purposes following, to wit:

"*First.* The said George W. Ewing, trustee, as aforesaid, shall sell and convey all such part or parts of the real estate hereby conveyed as to him shall seem most advantageous for the interest of the trust hereby created, and the proceeds thereof to invest for the same purposes for which this trust is created, to expend the same in improving such of the property hereby conveyed as the said trustee shall deem most advisable, and for the purpose of creating an income therefrom.

"*Second.* That of the income and profits arising under this trust, a reasonable sum, such as the said trustee shall deem to be sufficient, shall be expended for the maintenance of the said George W. Ewing, Junior, and the remainder, if any, after paying taxes, insurance and necessary expenses, shall be expended for the benefit of the trust, when and at such times as the trustee shall think best.

"*Third.* Should the trustee die before his said ward, that Jesse Holliday, of San Francisco, California, or, upon his refusal to act, such person as the court of common pleas of Allen county, Indiana, shall appoint, shall take up and continue this trust.

"*Fourth.* That upon the death of the said George W. Ewing, Junior, the property hereby placed in trust shall descend to the legal representatives of the said George W. Ewing, Junior, provided, however, that William G. Ewing, Junior, adopted son of William G. Ewing, deceased, shall, under no circumstances whatever, inherit or be entitled to any part or parcel thereof."

. On the 1st day of March, 1866, the grantee in the deed from which we have copied reconveyed to the grantor the property embraced in the deed, and not disposed of by the trustee under its provisions. In the latter conveyance it is

declared to be the intention to revoke the trust, and to re-invest the creator of the trust with absolute title to the property remaining in the trustee.

If there was power in the creator of the trust to revoke it, the appeal must fail; if there was no power of revocation, the appeal must be sustained.

That a trust is created, and created by a deed, there can be no doubt. The instrument is in form a deed, the appropriate words of conveyance are employed, the trust is well described, the beneficiaries designated, and the trustee duly named.

The deed also recites the payment of a consideration by the grantee, which, as the record now presents the case, can not be regarded as a mere nominal one. There is no element of a valid trust absent; every one of the essential requisites of a trust are present. If, therefore, the creator of the trust has power to revoke it, that power must exist because he is the sole beneficiary in the trust, no others having any vested rights. It is, of course, quite clear that the creator of a trust can not revoke it or the trustee destroy it by a reconveyance, if other persons have a vested interest in the trust.

The creator of this trust had an interest in it under the express provision that the property should, so far necessary, be used for his maintenance and support, and this express provision goes far towards showing that this was the only interest left in him, for the express mention of one thing implies the exclusion of all others. We do not affirm that this provision of itself controls the entire instrument, but we do affirm that it exerts an important influence. It is simply the application of a plain principle of logic to assert that where a man conveys lands, reserving to himself support and maintenance out of the estate conveyed, he conveys all other right and interest of which he is possessed. The express provision vesting in the creator of the trust the interest just mentioned must be taken in connection with the provision in the fourth paragraph of the deed, and that pro-

vision certainly vests some interest and estate in other persons. It declares that in the event of the grantor's death " the property shall descend to the legal representatives of the said George W. Ewing, Junior, provided, however, that William G. Ewing, Junior, adopted son of William G. Ewing, deceased, shall, under no circumstances, inherit or be entitled to any part or parcel thereof." If the grantor had used almost any other term than " legal representatives," there could be no question as to the effect of his deed. That term we can not hold controls the entire instrument. In a just sense, heirs or descendants are often legal representatives of a deceased person, and the deed before us declares that the property " shall descend," and to descend it must go to heirs or descendants."

In *Warnecke* v. *Lembca,* 71 Ill. 91, it was said : " Legal representative, or personal representative, in the commonly accepted sense, means administrator or executor. But this is not the only definition. It may mean heirs, next of kin or descendants."

It was said in *Grand Gulf, etc., Co.* v. *Bryan,* 8 S. & M. (Miss.) 234: " In legal parlance, the executor or administrator is most commonly called the legal representative. Still, in regard to things real, the heir is also the legal representative, and so is a devisee, who takes by purchase. Heirs may be the legal representatives, or they may not." Another court says: " But it is held that even in cases where the death of the party to be represented is in contemplation, the context of the instrument may change the usual meaning of the words in the given case." *Merchants' Nat'l Bank* v. *Abernathy,* 32 Mo. App. 211. Other courts declare that the term may mean heirs, assignees or receivers. *Davis* v. *Davis,* 26 Cal. 23 ; *Phelps* v. *Smith,* 15 Ill. 572 ; *Barbour* v. *Nat'l, etc., Bank,* 45 Ohio St. 133 ; *Hammond* v. *Mason & Hamlin Organ Co.,* 92 U. S. 724. Here the words with which the term is associated show its meaning. The word " descend " can not with propriety be construed to mean an executor or administrator, since

land goes by descent to heirs or descendants. The exclusion of the adopted son from inheritance shows that the author of the trust intended to vest the remainder in those who succeeded by inheritance or descent. The subject-matter is land, and when the term " legal representatives " is used with reference to land it ordinarily means those to whom the land descends. The whole scope and tenor of the instrument indicates that the remainder was created for descendants or heirs. This was expressly decided, and decided upon the very deed before us, by the Supreme Court of Minnesota. We, however, give the case extended discussion, for the reason that appellee's counsel say of counsel in the Minnesota case that "he admitted away his case, or nearly all his case," and not because we doubt the soundness of the decision in that case. In the case just mentioned, *Ewing* v. *Warner* (Minn.), 50 N. W. R. 603, the court said : " The term ' legal representatives,' in the fourth subdivision of the declaration of the trust, is evidently used as synonymous with ' heirs,' or those to whom the property would have descended had the grantor died seized of it."

The absence of the technical word "heirs" does not destroy the effect of the deed, for, under our statute, the courts must determine from the general scope and tenor of the instrument what estate the grantor conveyed. In the deed before us the grantor invests the grantee with power to sell, carves out for himself an interest,—the right to maintenance,— and provides for the continuance of the trust for the benefit of his heirs, or descendants. In carving out the special interest he necessarily provided that the remainder should vest elsewhere than in him. A construction which would make the deed mean that the grantor created a trust simply to secure himself support and maintenance would not be a reasonable one, nor can such a construction be adopted without doing violence to the general tenor of the instrument, and contravening settled rules of law. The dominion over the property which the deed vests in the trustee carries to him the fee. If the fee was carried into the trustee, it cer-

tainly went out of the author of the trust. It was in one or the other; it could not dwell in both of them. That the fee went into the trustee is not doubtful, for the authorities declare that where a trust is created with an absolute power to sell, the fee vests in the trustee. Mr. Perry thus states the rule: "If land is conveyed to trustees, without the word heirs, in trust to sell, they must have the fee, otherwise they could not sell." Perry Trusts, section 315. In *North* v. *Philbrook*, 34 Me. 532, it was said: "As a general rule, such a quantity of estate will be held to be vested in trustees as is required for the performance of the trust; and therefore if land be given to a man, without the word ' heirs,' and a trust be disclosed which can be satisfied in no other way but by the trustees taking an inheritance, it has been held that a fee passes; so, where there is a trust for sale, that is a purpose which it is impossible to serve unless the trustees have an inheritance, for if they are to sell a fee, they must have a fee." This is the doctrine of our court. *Locke* v. *Barbour*, 62 Ind. 577. It is, indeed, the doctrine of all the cases. But this case stands not alone upon the rule asserted by the authorities referred to, for the grantor reserved an interest to himself, clearly defined it, and made provision for the remainder. It seems very clear that, as the record presents the case to us, all of the estate except that expressly reserved passed from him, and lodged in the trustee; and the only possible question can be, in whom did the interest in remainder vest? So we come again to the provision of the fourth paragraph in the declaration of trust. That we were right in holding that the heirs of the author of the trust are designated, we have already assigned reasons, and adduced authority; but we may add with propriety this further reason: It is not conceivable that a trust was created for an executor or administrator, since there is no imaginable reason why the remainder should be given to persons unknown, and whom the author of the trust could not have had in mind.

The fact that a trust is created without consideration, and

is, in effect, the gift of land, does not change the rule. The trust is duly evidenced, and the title of the trustee and beneficiaries became vested upon the delivery of the deed. The author of the trust can not revoke it, unless fraud or mistake is shown, and no such issue is here made. This is the settled doctrine. Our own decisions have given the question full consideration. In *Gaylord* v. *City of Lafayette*, 115 Ind. 423, the authorities were examined with care, and the court said: "A voluntary trust, resting upon a meritorious consideration, and perfectly created, is irrevocable." At another place in the same opinion it was said: "A trust may be said to be executed when it has been perfectly and explicitly declared in a writing duly signed, in which the terms and conditions upon which the legal title to the trust estate has been conveyed, or is held, and the final intention of the creator of the trust in respect thereto, appear with such certainty that nothing remains to be done, except that the trustee, without any further act or appointment from the settlor, carry into effect the intention of the donor as declared. In such a case, even though there was no valuable consideration upon which the trust was originally declared, a court of chancery will enforce it in favor of one whose relation to the donor was such as to show a good or meritorious consideration." This doctrine is asserted in *Wright* v. *Moody*, 116 Ind. 175, and the general principle is enforced in *Waterman* v. *Morgan*, 114 Ind. 237 (240), where many of the cases are collected. Mr. Perry says: "A completed trust without reservation of power of revocation can only be revoked by consent of all the *cestuis*. If a voluntary trust for the benefit, wholly or partly, of some person or persons other than the grantor is once perfectly created, and the relation of trustee and *cestui que trust* is once established, it will be enforced, although the settlor has destroyed the deed, or has attempted to revoke it by making a second voluntary settlement of the same property or otherwise, or if the estate, by some accident, afterwards becomes revested in the

settlor. In all these cases the first perfectly created trust will be upheld, with all its consequences, and the settlor be declared a trustee. A trust once created and accepted without reservation of power can only be revoked by the consent of all parties in interest; if any of the parties are not in being, or are not *sui juris,* it can not be revoked at all." 1 Perry Trusts, section 104. Many cases are cited by the author.

Counsel for the appellee contend that the instrument is testamentary, and hence revocable at the pleasure of its author. If it is solely testamentary, the conclusion deduced is valid, but we can not so regard it. There is nothing in it from beginning to end that indicates by even the remotest intimation that it is a will, or partakes of the nature of a will. In form and substance, in recital and declaration, it is a deed of trust. It professes to be a deed, it expresses a consideration, its words are those of a deed, its declaration of a present trust is clear and emphatic. Not a word or provision contained in it indicates a design to have it operate as a testamentary instrument. It creates an effective trust, no power of control is left in the grantor, no provision is made for accounting to him, provision is made for succession in the trust in the event of the trustee's death, and provision is made for the beneficiaries who take under the deed. If we should hold this deed to be a mere testamentary disposition of property, we should go counter to principle and authority, and should lay down a rule that would make all instruments carrying a trust beyond the life of the testator mere ambulatory testamentary instruments. That we can not do. We have examined with care the Pennsylvania cases brought to our attention by counsel, but we can not regard them as of controlling influence. Those cases are *Frederick's Appeal,* 52 Pa. St. 338, *Rick's Appeal,* 105 Pa. St. 528, and *Gingrich's Appeal,* 17 Alt. R. 33. The last named cases rest on the case first named, and that, as it is explained in *Rick's Appeal, supra,* is not in point.

In the case last mentioned, in speaking of the case first

named, the court said: "It was held that the instrument was in effect a mere power of attorney; an instrument of agency and revocable at pleasure; that the deed was made for the grantor's own personal convenience; that the trustees were to account to him for all they did under the powers vested in them, and that no beneficial interest was to vest in his children till after his death." In *Turner* v. *Scott,* 51 Pa. St. 126, the instrument under consideration was utterly unlike the one before us, for it provided that "It should in no way take effect until after the grantor's death." The deed. before the court in *Symmes* v. *Arnold,* 10 Ga. 506, was not a deed of trust vesting a present interest, but a deed wherein it was provided that after the death of the grantor "from thenceforth" the property should be that of the grantees absolutely.

It is unnecessary for us to approve or disapprove the reasoning in any of the cases referred to, for it is sufficient to assert that no one of them is relevant to the point here in dispute. In *Cox* v. *Curiwen,* 118 Mass. 198, it was simply held that there was nothing in the deed from which it could be inferred that the words "legal representatives" were used as meaning heirs. But it is doubtful whether the decision in that case is sound, since the term "legal representatives," when used respecting land, means heirs, and not those who can take only the personal estate. As said by the Supreme Court of the United States, in *Dunrow* v. *Walker,* 2 Dallas, 205, in speaking of the term "legal representatives:" "For, though the expression might, in the abstract, appear equivocal and ambiguous, it was explained by the subject-matter; and land, *ex vi termini,* importing real estate, the legal representative, must, in legal contemplation, be the heir and not the administrator." But whatever else may be said of the soundness of the decision in *Cox* v. *Curiwen, supra,* it is safe to say that it is not influential here, for the reason that the instrument there construed was radically different from the one with which we are here concerned.

We are referred to the case of *Nearpass* v. *Newman,* 106 N. Y. 47, but the instrument upon which the court acted in that case bears very little resemblance to the one before us. In that case the grantor conveyed the land in trust for his wife and children, but made no provision for a successorship in the trust, nor for the disposition of the property after the death of the author of the trust. Not only was that instrument different from the one we have here under consideration in the particulars indicated, but it was also different in the essential feature exhibited in the quotation from the opinion in that case which follows, and is this: "It was also provided that Neefus should reconvey the property to Newman in case the said Harriet 'should fail to comply or perform in good faith her part of the covenants herein contained,' and finally it was declared that 'said quit-claim deed, also said bond with collateral and the bill of sale, all to be in escrow (said Neefus the party) to be delivered when said Harriet faithfully performs all her covenants hereinafter contained." That this provision exerted an important influence is obvious. It was, indeed, regarded by the court as controlling, for it was said: "The idea that the property was to be reconveyed to Newman if Harriet failed to perform her contract, is inconsistent with the theory of any personal interest in Neefus, while it was essential to the performance of his trust, as well as the enforcement of the security, that he should have the title of the property, with the power of converting it." In this case there is an absolute trust fully declared, and the estate in expectancy is vested in the heirs of the author as the beneficiaries, for there is no power reserved to revoke or reconvey.

We have examined the case with care, without assuming that counsel have, as in the Minnesota case, made any admissions, and we have reached the same conclusion as that declared by the Supreme Court of Minnesota in *Ewing* v. *Warner, supra.* We can not escape the conviction that

the instrument before the court in that case, and before us in this, was correctly construed and enforced.

We are referred to a class of cases of which *Garnsey* v. *Mundy*, 24 N. J. Eq. 243, and *Aylsworth* v. *Whitcomb*, 12 R. I. 298, are types, and asked to apply the rule they assert to the case at our bar. But it is evident that, even if the instruments there under consideration were in legal effect the same as that before us, we could not, under the issues in this case, apply the rule asserted in these cases. Here the parties stand upon the words of the deed; there is no pleading averring directly or indirectly that there was fraud or mistake. We decline, therefore, to enter upon an inquiry as to what the rule would be if the deed should be assailed upon the ground of fraud or mistake. Whether equity will relieve upon the ground of fraud or mistake is not a question presented by the record, and we give no opinion bearing upon it.

Judgment reversed.

Filed Jan. 28, 1892.