Ewing *et al. v.* Wilson *et al.*

Filed Sept. 16,.1892.

No. 15,949.

EWING ET AL. *v.* WILSON ET AL.

| 132 | 223 |
|-----|-----|
| 132 | 205 |
| 132 | 600 |
| 132 | 223 |
| 145 | 114 |
| 132 | 223 |
| 149 | 2 |
| 149 | 7 |
| 149 | 8 |
| 149 | 9 |
| 149 | 431 |
| 151 | 386 |
| 132 | 223 |
| 155 | 427 |

TRUST.— *Undue Influence.—Revocation.— Consideration. — Parol Evidence.— Bona Fide Purchaser.—*A young man between twenty-two and twenty-three years of age, without business experience or knowledge, intemperate in his habits, unmarried, and easily influenced by those in whom he had confidence, was induced by his father, a man of large wealth, great ability and force of character, and who possessed a commanding influence over his son, to convey to him for a consideration named in the deed of $600 (no actual consideration being paid), all his property of the estimated value of $50,000 in trust for himself for life, remainder to his personal representatives. Afterwards the father reconveyed the property to the son, and he in turn conveyed the land in dispute—a portion of that originally conveyed to the father—to *bona fide* purchasers. The son died and his legal representatives claim title to the land.

*Held,* that they had no title that equity would enforce, the deed to the father being unconscionable, and the reconveyance to the son being simply what in equity and good conscience it was the father's duty to do.

*Held,* also, that the reconveyance showed that the trustee intended that the trust should be temporary, and that it was an exposition of the contract by the contracting parties themselves, and entitled to weight.

*Held,* also, that the provisions in the deed declaring where the property

should go in case of the donor's death, did not make the son's voluntary deed irrevocable, the facts showing that the conveyance was executed for a temporary purpose, and that the grantee, recognizing the fact that the purpose had been accomplished, reconveyed the property to the donor.

*Held,* also, that the purchasers from the son had a right to assume that there was *prima facie* a valid reason for the conveyance and a consideration for it.

*Held,* also, that it was competent to prove by parol the want of actual consideration and the circumstances surrounding the execution of the deed.

From the Cass Circuit Court.

*J. C. Nelson, Q. A. Myers* and *R. E. Pendarvis,* for appellants.

*D. D. Dykeman, W. T. Wilson* and *M. Winfield,* for appellees.

ELLIOTT, C. J.—The appellants claim title to real estate, and base their claim upon a deed executed to George W. Ewing, senior, by George W. Ewing, junior. The deed is the same as that which received consideration in the cases of *Ewing* v. *Jones,* 130 Ind. 247 ; *Ewing* v. *Lutz,* 131 Ind. 361, and other cases. The decisions in those cases conclusively settle the questions arising upon the instrument itself, but they go no further ; on the contrary, as the opinions in those cases expressly declare, the court confined its decision to the language of the deed, considered without reference to extrinsic facts. In this case questions very different from those presented in the cases referred to require consideration and decision. In the case before us the appellees filed a cross-complaint, asserting title and praying that it be quieted in them, and the court made a special finding. The questions we are required to consider and decide arise on the special finding, for the ascertainment and declaration of the principles applicable to the facts stated in the finding, necessarily involve and dispose of all the incidental questions presented by the ruling denying a new trial.

The special finding sets forth various conveyances, and,

among others, the deed of George W. Ewing, junior, to George W. Ewing, senior, and also the deeds executed by the latter reconveying the land to the former. Those deeds are sufficiently set forth or referred to in *Ewing* v. *Jones, supra,* and we do not deem it necessary to again copy them or to give a more particular statement of their contents. We copy from the finding the trial court's statement of the facts connected with the execution of the conveyance first mentioned: "That said George W. Ewing, second, was born July 20th, 1841, and was at the time of the execution of the deed between twenty-two and twenty-three years of age and had just attained his majority, that he had been in the army and had no business experience or knowledge; that he was intemperate in his habits, unmarried, and easily influenced by those in whom he had confidence, and was particularly under the influence and control of George W. Ewing, senior, his father, the grantee in said deed; that said deed described and included all of the estate, real and personal, of which George W. Ewing, second, was at the time possessed of; that the property so conveyed was of the value of fifty thousand dollars; that George W. Ewing, senior, grantee and trustee named in said deed, was the father of George W. Ewing, second, was a man of great wealth—more than two millions of dollars—of large experience in business matters, great ability and force of character, and generally carrying things his own way with persons connected with him; that he had a commanding influence over his son, said George W. Ewing, second; that the deed of trust of December, 1863, was executed by George W. Ewing, second, in compliance with the suggestion and at the dictation of George W. Ewing, senior; that the consideration of six hundred dollars named in the deed was nominal and was never in fact paid as recited in said deed, but only advanced out of the future income of the trust property, and in an accounting had later it was accounted for out of said income; that at the time

the deed was executed and for the purpose of keeping him out of the army the grantee in said deed had directed the grantor to go to California, and the grantor had agreed to go; that both grantor and grantee, in executing said deed, understood that it should be temporary only, and that on the son's return from his visit, or as soon as he desired, its powers should be revoked, but, meantime, his father in acting under said deed should manage the property and create an income therefrom; that said deed was prepared at the instance of the grantee, George W. Ewing, senior, by William Lytle and Bynum D. Minor, his confidential bookkeepers, both of whom were devoted to his interests and controlled by his wishes; no professional counsel was present or consulted."

The controlling question in this case is as to the effect of the trust deed executed by Ewing, the son, to Ewing, the father, as read by the light of the circumstances attending its execution, and as interpreted by the subsequent acts of the grantor and the grantee. The light from these sources falls fully upon the case before us, but it was entirely absent from the case as made by the record in *Ewing* v. *Jones, supra.* The great rule, we may say at the outset, for the construction of instruments is to discover and execute the intention of the contracting parties. In this instance it is our duty to ascertain, if we can, the intention of the parties, and, if our quest results successfully, give the intention full effect. The general question may be thus stated. Did Ewing, the son, intend to part with all dominion over his property and vest it irrevocably in Ewing, the father, and did the deed of trust as read by the light of attendant facts and the settled principles of equity jurisprudence, have the effect to completely divest the grantor of all his property? If this was the intention of the parties and the effect of the deed, it must stand as written; if it was not, the reconveyance of the senior Ewing was effective, and the appeal must fail.

It is too well settled to admit of controversy that parol

evidence is competent for the purpose of proving fraud or mistake. Equity will relieve upon parol evidence, and in cases similar in their general features to the present courts have often reformed instruments such as the one before us. *Willan* v. *Willan*, 16 Vesey, 72; *Wiser* v. *Blachly*, 1 Johns. Ch. 607; *Quick* v. *Stuyvesant*, 2 Paige, 84; *Coles* v. *Bowne*, 10 Paige, 526; *Firmstone* v. *DeCamp*, 17 N. J. Eq. 309; *Ketselbrack* v. *Livingston*, 4 Johns. Ch. 144. It is an elementary rule that parol evidence is competent to prove the consideration of a deed, and a rule of like elementary character is, that parol evidence is admissible even where there is no fraud or mistake to show facts surrounding the execution of an instrument. It is, therefore, no objection to the special finding before us that it contains facts resting on parol as well as matters embodied in written instruments. It would not be an effective objection in ordinary cases, and it is even less effective in such a case as this, in view of the facts attending the execution of the deed, the confidential relation of the parties, and the nature of the transaction.

Conspicuous among the facts is the absence of consideration. It is now known to us that the trust deed was without consideration. If, therefore, Ewing, the son, irrevocably parted with his property, he did it because it was his intention to make an absolute and unalterable gift. If this was his intention, Ewing, the father, took as the trustee of donees, who had yielded no consideration. Neither is the trustee a *bona fide* purchaser, nor are the beneficiaries purchasers for value, and hence they have no rights as purchasers of that class. The trustee is, indeed, constructively if not actually, a *mala fide* donee, for the means by which he secured the execution of the deed, the advantage he took of the confidential relations existing between him and his son, the use he made of his influence, and the agents he employed to secure an instrument fitting his purpose strip him of the vestments of a donee in good faith. There was undue use of confidential relation, and there was resort to extraordinary

means.  The end attained was unconscionable, for a trans-
action which takes from a man all his property without con-
sideration is not commendable or just, unless there was full
knowledge and entire and unfettered freedom of thought and
action.

The authorities fully warrant the conclusion that a court
of equity will not enforce an instrument executed under such
circumstances as was the one before us, in favor of the active
procurer of its execution.  *Ashton* v. *Thompson*, 32 Minn.
25 ; *Miskey's Appeal*, 107 Pa. St. 611 ; *Bainbrigge* v. *Browne*
18 L. R. Ch. D. 188 ; *Berdoe* v. *Dawson*, 34 Beav. 603 ; *Miller*
v. *Simonds*, 72 Mo. 669 ;  *Wood* v. *Rabe*, 96 N. Y. 414.  In
*Miller* v. *Simonds, supra*, the child was of full age, but it was
held in a well reasoned opinion that the gift was ineffective,
because of the undue influence which the kinship between
father and child gave the former.  Gifts procured by a pa-
rent from a child are regarded with stern eyes by the courts
of equity, and are not upheld if there are circumstances in-
dicating their unconscionable character, or showing the use
of an undue or improper influence.  *Garvin* v. *Williams*, 44
Mo. 465 ; *Street* v. *Goss*, 62 Mo. 226.  In the case last cited
it was said, in speaking of a gift by a kinswoman to a kins-
man :  " There exists, therefore, no necessity to show fraud
or imposition practiced on him who bestows the confidence ;
but simply to show that, during the pendency of such inti-
mate relations, the conveyance in question was made.  This
being done, all the above mentioned consequences as to the
*onus* of proof attend the given transaction as inevitable, in-
cidents."

The existence of a confidential relation, as has long been
settled, subjects all gifts to suspicion, and they can be rescued
from condemnation only by evidence establishing good faith,
full knowledge of consequences and of the facts.  Here we
have not only the relationship, but we have also the influence
flowing from it and the means resorted to for the purpose of
effectuating the grantee's design.  It is not necessary in such

cases that there should be actual fraud; wicked intent may be absent and yet the transaction be ineffective. In addition to the extrinsic facts (the absence of consideration, the nature of the transaction, and the object of the actor, whose mind dictated all that was done and whose influence controlled), we have the peculiar nature of the instrument itself. Of the provisions of the instrument and the effect given them by the law, we shall presently speak in detail, so that it is enough for our immediate purpose to say that they are of a character to which the law attaches a meaning and force not tending to support such a gift as that which is needed to make the asserted trust effective. It seems quite clear to our minds that the trustee when he reconveyed the property to the creator of the trust did simply what in equity and good conscience it was his duty to do. This is not so simply because of the extrinsic facts to which we have adverted,— although they would be sufficient as we believe to create the duty,—but because of the fact that the effect of the deed was, as the finding declares, intended to be temporary. The reconveyance is significant. It is significant as showing that the trustee intended that the trust should be temporary, and as showing that it was the right of the donor to have his property restored to him. Nor is this its only, or, indeed, its chief significance. It has a deeper meaning and more potent significance. It is an exposition of the contract by the contracting parties themselves, and they best knew what their intention was, and what they believed their contract to mean. Such an exposition is of weight. *Louisville, etc., R. W. Co.* v. *Reynolds,* 118 Ind. 170 (173) ; *Vinton* v. *Baldwin,* 95 Ind. 433, and cases cited ; *Reissner* v. *Oxley,* 80 Ind. 580 ; *Johnson* v. *Gibson,* 78 Ind. 282, and authorities cited ; *Chicago* v. *Sheldon,* 9 Wall. 50. If the controversy were waged between the trustee and the creator of the trust, there would, every one must see, be no debatable question, for the trustee's rights, if any he ever had, are irretrievably gone. Gone, not simply because he reconveyed, but because

by his acts and conduct he has given a construction to the contract which sweeps away every vestige and shadow of right. But the antecedent facts combine with the subsequent, and all conspire with irresistible power to prove that he never had any right to irrevocably deprive the author of the trust of his property.

We assume with undoubting confidence that the trustee never acquired a permanent and indefeasible right to the donor's property, and that when he executed the deed reconveying the property he did what it was his plain duty to do. Neither in strict law nor in broad justice had the trustee a right to the property. To every enlightened mind it must, we venture to affirm, be clear that in equity and good conscience the donor was always the owner of the land. The legal title was transiently out of him for a definite purpose, but the equitable ownership was never irrevocably surrendered. If it be true that in equity the donor never lost his property, it must also be true that his descendants never acquired that which he had sold during life to *bona fide* purchasers, such as the appellees. If it be true, as true it is, that the donor never parted with the property, the result must necessarily be that there was no particular estate in the first taker nor any absolute estate in expectancy in the remainderman. We are not without authority upon this point, although the question seems so plain upon principle that authority is not required. In *Miller* v. *Simonds, supra,* the court said: "And it is well settled that the undue influence need not proceed from the recipient of the ward's or donor's bounty, but it is equally fatal to the validity of the gift that such influence was exerted by a third person. *Ranken* v. *Patton,* 65 Mo. 378 ; *Ford* v. *Hennessey,* 70 Mo. 580." But the doctrine may well be placed on broader grounds. It is an ancient maxim, and a wise one, that " Fraud vitiates everything." So that the fraud of the procurer of the deed, whether actual or implied, poisoned it from beginning to end. It is a fundamental principle, worthy of the rank of a maxim, that

"What fraud creates equity will destroy." If therefore, fraud created the deed from Ewing, the son, to Ewing, the father, equity will destroy it. If the fraud vitiated or destroyed the original deed, neither the trustees nor the donees of the declared estate in remainder can base title upon it nor take rights from its provisions. We regard it as clear that the appellants have shown no enforceable title, and without title a recovery by them is legally impossible.

Our conclusion that the appellants ought not, and can not, wrest the land in controversy from the appellees will be strengthened by a consideration of the provisions of the deed of Ewing, junior, to Ewing, senior, in connection with the extrinsic facts, and we shall now consider the provisions of the instrument somewhat in detail in conjunction with the facts attending its execution. We know that it recites a consideration, but we know, also, that the recital is not true, and, knowing this, know that it evidences a mere voluntary gift. We know that during life the beneficial interest is declared to be in the author of the gift, so that he did not even professedly part with all interest. As to this interest it is clear that the trust was revocable and was revoked by the conveyance made by the trustee to the donor, so that there can be no question except such as affects the persons to whom the deed professed to convey an estate in remainder. But the reservation of the interest in the subject of the gift is not without influence upon the rights of those persons, for this provision, considered in connection with the absence from the deed of a power of revocation, is one of controlling importance. The rule as it has long existed, and as affirmed by the courts of England and America is, that: where there is a voluntary gift of the entire estate of the donor, a reservation of the principal beneficial interest by him and no power of revocation, the instrument will be held ineffective as against its author, unless it appears that there was an intention to make the donation irrevocable. In a note to *Garnsey* v. *Mundy,* 13 Am. Law Reg. 345 (354),

Mr. Bispham fully and ably reviews the authorities, and states one of the conclusions which they establish in these words : "But where the deliberate intent to make a gift does not appear, and where no motive for such a gift is shown, the absence of a power of revocation is *prima facie* an evidence of a mistake. The rule is the same when the motive has failed." This is a guarded statement of the rule, for many of the authorities warrant a stronger statement. Bispham Eq. 107, and note; Aylsworth v. Whitcomb, 12 R. I. 298; Angell, Pet., 13 R. I. 630. Here, as in the first of the cases cited, it appears that the parties did not intend that the deed should be irrevocable, but here that intention was unequivocally manifested by a reconveyance. The fact that a reconveyance was made is indicative of the belief of the parties that the donation was not irrevocable.

It can not be said that the provision in the deed of trust limiting a remainder to the legal representatives of the donor is so strong as to override all other facts, and, despite the facts, control the instrument. Unexplained or uncontrolled that provision, written in a deed founded upon a valuable consideration, does carry an estate in remainder, and is an indication of an intention to create an irrevocable gift. But it is not such a clear and decisive manifestation of an intention to create an irrevocable gift as to make all other things yield to it. The provision may, with entire propriety, be given effect, and yet it be held that no irrevocable gift was created. It is quite consistent with the theory that the deed of trust is revocable to adjudge that the donor did therein provide for the disposition of the property remaining after his death. He knew, as did his trustee, that he might die before the revocation of the deed, and it was reasonable and natural to make provision for such a contingency. If the deed had limited the duration of the trust to a very short time—a year, or even a week —it would have been entirely consistent to have written in the instrument a provision declaring to whom the property

should go in the event of the death of the donor while the deed remained unrevoked. In the light of the circumstances under which the deed was written it was prudent to make provision for the disposition of the property in case of the death of the donor before the termination of the declared temporary trust, and hence that provision can not be regarded as clearly evincing an intention to make a gift that could never be revoked. There is, in truth, not the slightest reason for asserting, even in ordinary cases, that a provision declaring where property shall go in case a donor dies necessarily makes a voluntary deed irrevocable. It is, at all events, very clear that such a provision can not control where, as here, the facts show that the conveyance was executed for a temporary purpose, and that the grantee, recognizing the fact that the purpose had been accomplished, reconveyed the property to the donor.

At the time the deed of trust was executed the appellants had no claim whatever to the land in controversy, for Ewing, the son, was then unmarried, but the appellees are *bona fide* purchasers in all that the term implies, unless the deed of trust irrevocably took the property from the donor. The appellants have paid no value, and all the claim, or color of claim, they have, or can have, is founded on the voluntary gift of their ancestor, and they are not in a situation to successfully contend against the strong equities of the appellees. These equities the extrinsic facts make evident, and they can not be disregarded. The appellees bought upon the faith of a deed executed by the trustee to the donor, and that deed was sufficient, at least, to warrant the belief that the immediate parties to the original deed regarded it as a revocable conveyance, so that the appellees did not buy recklessly or negligently. They were neither volunteers nor negligent buyers. They had a right to assume that there was, *prima facie*, a valid reason for the reconveyance and a consideration for it, for the reason that the trustee did what it was his duty to do and the donor received back what he had a right to take.

We do not say, nor mean to say, that the appellees could hold the property if there were no facts exhibited showing the real nature of the transaction, but we do say without hesitation that,in view,of the facts under which the original deed was executed the deed reconveying the land was rightfully executed, is effective and should stand. Equity regards as done that which ought to have been done, and upon the facts here disclosed equity would unquestionably have decreed a cancellation of the trust deed had the donor invoked its aid against the trustee. *Wollaston* v. *Tribe,* 9 L. R. Eq. 44; *Hall* v. *Hall,* 14 L. R. 365; *Russell's Appeal,* 75 Pa. St. 269; *Case* v. *Case,* 26 Mich. 49; *Houghton* v. *Houghton,* 15 Beav. 278; *In re Gangwere's Estate,* 14 Pa. St. 419; *Cooke* v. *Lamotte,* 15 Beav. 234. *Huguenin* v. *Baseley,* 14 Vesey, 293; *Phillipson* v. *Kerry,* 32 Beav. 628; *Nanney* v. *Williams,* 22 Beav. 452; *Phillips* v. *Mullings,* 7 Ch. App. 244; *Forshaw* v. *Welsby,* 30 Beav. 243; We can not comment upon the cases to which we have referred in detail, nor is it necessary that we should do so, for the doctrine which they sustain is accurately stated in *Coutts* v. *Acworth,* L. R. 8 Eq. 558, where it was said : "The party taking a benefit under a voluntary settlement or gift, containing no power of revocation, has thrown upon him the burden of proving that there was a distinct intention on the part of the donor to make the gift irrevocable. And, where the circumstances are such that the donor ought to be advised to retain a power of revocation, it is the duty of the solicitor to insist upon the insertion of such power, and the want of it will in general be fatal to the deed." The case before us is, indeed, stronger than any of those cited, here there was no solicitor, here there was no professional counsel, here no means were afforded the donor to acquire knowledge of the effect of his deed of gift, it was here far otherwise, here confidential agents of the trustee drew the deed, here the trustee was a man of affairs and experience, and the donor young and unacquainted with business affairs, and here, too, the

intention was not to execute an irrevocable deed of gift. This intention seems to have been mutual for it was carried into effect by a reconveyance, but if the intention to make an irrevocable gift had not existed in the mind of the donor the deed was revocable and was revoked, completely and forever, by the reconveyance to the author of the conditional or inchoate gift. If the donor did not intend to make an unalterable gift, none was made, no matter what may have been the purpose of the trustee or that of his book-keepers who drew the deed. The case is all the stronger because the facts indicate that both the donor and his trustee intended that the trust should be revocable, but it would be strong enough to effectually defeat the appellants if the donor, only, had intended to make an incomplete and not an absolute disposition of his property. It would, indeed, have been strong enough to effect that result if it had not affirmatively appeared that the donor did not intend to create such a gift, for, in the absence of proof of such an intention, the presumption in such a case as this would be that he reserved the power of revocation.

The case is with the appellees upon the broad principles of natural justice and upon the decisions of the courts.

Judgment affirmed.

Filed April 27, 1892; petition for a rehearing overruled Sept. 17, **1892.**