IN THE

# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1897, IN
THE EIGHTY-FIRST AND EIGHTY-SECOND
YEARS OF THE STATE.

---

EWING *v.* BASS ET AL.

[No. 17,512.   Filed November 18, 1897.]

TRUST DEEDS.—*Revocation.*—Where a son twenty-two years of age
having no business capacity or business experience, intemperate in
habits and easily influenced, conveyed to his father, a man of great
ability and force of character, his entire estate, valued at $50,000.00,
in trust, and at the death of such son to descend to his legal repre-
sentatives, for a nominal consideration of $600.00, which was never
in fact paid, the understanding between the father and son at the
time being that such conveyance should only be temporary, such
deed being so unconscionable and so impressed with undue influ-
ence could not be upheld in equity, and a reconveyance of the prop-
erty by the father to the son was an act which equity and good
conscience required, and the legal representatives of the son at his
death had no title to such lands which he had conveyed to *bona
fide* purchasers after such reconveyance.   *pp. 2–9.*

EVIDENCE.—*Quieting Title.—Declarations Made at Time of Convey-
ance.*—In an action to quiet title to real estate declarations made as
a part of the negotiations leading up to a reconveyance of the real
estate by a trustee were admissible as tending to show the reason
why the deed of reconveyance was executed.   *pp. 9, 10.*

Ewing *v*. Bass *et al*.

SAME.—*Waiver of Objections.*—Where a party in the trial of an action to quiet title to real estate introduces declarations made by the grantor relative thereto, after the execution of such deed, he cannot complain of the introduction in evidence by his adversary of declarations made by the parties at the time of the execution thereof. *p. 10.*

From the Allen Superior Court. *Affirmed.*

*L. M. Ninde & Sons*, for appellant.

*Morris, Bell, Barrett & Morris*, for appellees.

JORDAN, J.—Appellant prosecuted this action in the lower court to recover the possession of certain described real estate, and to quiet title thereto. The trust deed, through and under which appellant claims title to the lands herein involved, is the same which was before this court and received consideration in the cases of *Ewing* v. *Jones*, 130 Ind. 247; *Ewing* v. *Lutz*, 131 Ind. 361, and *Ewing* v. *Wilson*, 132 Ind. 223.

In the case at bar, the appellees filed a cross-complaint, praying that their title to the realty in question be quieted. The court made a special finding of facts and stated its conclusions of law thereon in favor of appellees, and, over a motion for a new trial by appellant, rendered judgment accordingly.

The facts, which appear to be uncontroverted, are as follows: On December 31, 1863, Geo. W. Ewing, Jr., being the owner of a large amount of property, devised to him by his uncle, William G. Ewing, executed on that day to Geo. W. Ewing, Sr., his father, the trust deed in dispute, whereby he conveyed to the latter, in trust, all of his said property. Omitting the description of the property and the certificate of acknowledgment, said deed is as follows: "This indenture witnesseth, that George W. Ewing, junior, a devisee of William G. Ewing, deceased, late of Allen county, Indiana, in consideration of six hundred dollars, and other good and sufficient considerations, does by these presents, give, grant, bargain and sell to

George W.. Ewing, of Cook county, Illinois, father of said George W. Ewing, Jr., the following described real estate, * * * * (here follow descriptions of certain tracts of real estate in Missouri, Illinois, Indiana, Wisconsin, .Minnesota, and Ohio) * * * * and also the estate real and personal * * * * as has or may descend to the grantor under and by the will of said William G. Ewing, deceased (in each of said states), and also all the estate of every name and nature, wherever situated, which has descended or may descend to the grantor under and by virtue of the will of William G. Ewing, deceased, intending by this conveyance to make the grantee, father of the grantor, trustee for all the property of the grantor, wheresoever situated. To have and to hold the same to the said George W. Ewing in trust for the uses and purposes following, to wit: First. The said George W. Ewing, trustee, as aforesaid, shall sell and convey all such part or parts of the real estate hereby conveyed to him as he shall deem most advantageous for the interest of the trust hereby created, and the proceeds thereof to invest for the same purpose for which this trust is created, or to expend the same in improving such of the property hereby conveyed as the said trustee shall deem most advisable, and for the purpose of creating an income thereform. Second. That of the income and profits arising under this trust a reasonable sum, such as the said trustee shall deem to be sufficient, shall be expended for the maintenance of the said George W. Ewing, junior, and the remainder, if any, after paying taxes, insurance, and necessary expenses, shall be expended for the benefit of the trust, when and at such times as the trustee shall think best. Third. Should the said trustee die before his said ward, that Jesse Holliday, of San Francisco, California, or, upon his refusal to act, such person as the

Court of Common Pleas of Allen county, Indiana, shall appoint, shall take up and continue this trust. Fourth. That upon the death of the said George W. Ewing, junior, the property hereby placed in trust shall descend to the legal representatives of the said George W. Ewing, junior, provided, however, that William G. Ewing, junior, adopted son of the said William G. Ewing, deceased, shall under no circumstances whatever inherit or be entitled to any part or parcel thereof. In witness whereof the said George W. Ewing, junior, has hereunto set his hand and seal, this 31st day of December, A. D. 1863. George W. Ewing, Jr. Seal." (Attestation following.)

On March 1, 1866, Ewing, Sr., executed to his said son, Ewing, Jr., a deed of revocation, whereby he reconveyed to him the property embraced in the trust deed; said instrument of reconveyance being as follows (omitting the description of the property and the certificate of acknowledgment): "Whereas, on the 31st day of December, 1863, A. D., by his conveyance of that date, George W. Ewing, Jr., conveyed to George W. Ewing, the father of said George W. Ewing, Jr., in trust for the uses and purposes therein mentioned, the real and personal estate in said conveyance described, which descended to him from his uncle, William G. Ewing, deceased; and, whereas, it is now desired that said trust should be terminated and the unsold property mentioned in said trust deed should be reconveyed to said George W. Ewing, Jr. Now, therefore, in consideration of the premises the said George W. Ewing, trustee, as aforesaid, does by these presents quitclaim and reconvey to the said George W. Ewing, Jr., all the following described real estate: [Here follows description.] Meaning and intending by this conveyance to reconvey to the said George W.

Ewing, Jr., only such of the property conveyed to the grantor herein by the conveyance of December 31, 1863, as remains unsold; and, also, intending by this conveyance to convey to said George W. Ewing, Jr., all such property as the trustee acquired by virtue of said trust, particularly that acquired in an exchange of property with Mary L. Guthrie and husband for the benefit of said trust. To have and to hold the same to said George W. Ewing, Jr., and his heirs and assigns as fully and amply as the grantor is authorized to re-convey the same. In witness whereof the grantor has hereunto set his hand and seal; this 1st day of March, A. D. 1866. George W. Ewing. Seal."

George W. Ewing, Jr., was born on July 20, 1841, and at the time he executed the trust deed to his father he was unmarried and had no one dependent upon him for support. On November 2, 1865, he was married to Mary C. Sweetzer, and on September 6, 1866, appellant was born as the fruits of said marriage. After the reconveyance of the property by the father to his son George, it seems to have passed under the management and control of the latter. Ewing, Sr., died on May 29, 1866, and on December 2, 1872, Ewing, Jr., died, leaving his said wife and the appellant, his son, surviving him as his only heirs at law.

The real estate here in controversy was a part of that embraced in the trust deed and in the deed of reconveyance; and the appellees claim title as *bona fide* purchasers through Ewing, Jr., after the execution of the last mentioned instrument.

The following, in substance, are other material facts, fully supported by the evidence, and found by the court under the issues in the cause: George W. Ewing, Jr., at the time he executed the trust deed to his said father, George W., Sr., was but a few months

over the age of twenty-two years. Prior thereto, Ewing, Jr., had been in the army of the United States for about one year, and had but recently before the execution thereof returned home. That at and prior to the time he made this deed to his father, he had no business capacity or business experience whatever, was of intemperate habits, easily influenced, and was particularly subject to and under the influence of his said father; that this deed embraced all of the property or estate which he owned, and was of the value of $50,000.00; that Ewing, Sr., the father and trustee, at the date of the deed was a man of great wealth, and had much experience in business matters, possessed great ability and force of character, and, in general, carried or had matters his own way in his dealings with persons connected with him, and had a commanding influence over his said son, George W., Jr., and other members of his family; that the deed in question was executed by Ewing, Jr., to his father in compliance with the suggestions and the dictation of the latter. The consideration of $600.00 mentioned in the deed of trust was nominal, and, in fact, was never actually paid by the trustee, as recited, but only advanced out of the future income of the property conveyed by the trust deed, and in an accounting subsequently had between said father and son, it was retained by the former out of said income. At the time of the execution of the trust deed, the father, for the purpose of preventing his son George W. Ewing, Jr., from again enlisting in the army, had directed him to go to California; that the son agreed to go, and did, soon after the deed was made, go to said state; that said Ewing, Sr., and Ewing, Jr., both, at the time the trust deed was executed, understood that it should only be temporary, and on the return of the latter from California, or as soon as the son desired, this

deed, or the powers granted thereby should be revoked, but in the meantime the father should, under the deed, manage the property, in order that it might produce an income for the son; that said deed was, at the instance of the father, prepared by William Lytel and B. D. Miner, one his confidential bookkeeper and the other his confidential business manager, both of whom were devoted to the interests of the father and controlled by his wishes; no professional counsel was present or consulted.

The issues and facts in this case, and the questions which they present, in the main, are substantially the same as were those in *Ewing* v. *Wilson, supra,* and if the holding in that case is adhered to, it conclusively settles the principal questions involved in this appeal, and the judgment must be affirmed. The contention in that case, as it is in this, was that Ewing, Jr., by his deed of trust intended to deprive himself of all dominion and control over his property and vest the same irrevocably in his father, Ewing, Sr., and that the deed of reconveyance by the father to the son did not serve to revoke the trust and again vest the title in the son, and, consequently, at the death of the latter, the appellant, as his heir, under the provisions of the trust deed, became the owner of the property.

This court, in the case above referred to, under the facts therein, and the law applicable thereto, refused to sustain this contention. The court, as then constituted, held, in effect, that the trust deed was so unconscionable and so impressed with undue influence that in equity it could not be upheld. That the reconveyance of the property by the father to the son was simply an act which equity and good conscience required the former to perform; therefore, the deed reconveying the land was rightfully executed and should stand. Elliott, J., speaking for the court in

that case, in the course of the opinion, on page 230, said: "Neither in strict law nor in broad justice had the trustee a right to the property. To every enlightened mind it must, we venture to affirm, be clear that in equity and good conscience the donor was always the owner of the land. The legal title was transiently out of him for a definite purpose, but the equitable ownership was never irrevocably surrendered. If it be true that in equity the donor never lost his property, it must also be true that his descendants never acquired that which he had sold during life to a *bona fide* purchaser, such as the appellees. If it be true, as true it is, that the donor never parted with the property, the result must necessarily be that there was no particular estate in the first taker nor any absolute estate in expectancy in the remainderman. We are not without authority upon this point, although the question seems so plain upon principle that authority is not required.   *   *   *   But the doctrine may well be placed on broader grounds. It is an ancient maxim, and a wise one, that 'Fraud vitiates everything.' So that the fraud of the procurer of the deed, whether actual or implied, poisoned it from beginning to end. It is a fundamental principle, worthy of the rank of a maxim, that 'What fraud creates equity will destroy.' If therefore, fraud created the deed from Ewing, the son, to Ewing, the father, equity will destroy it. If the fraud vitiated or destroyed the original deed, neither the trustees nor the donees of the declared estate in remainder can base title upon it nor take rights from its provisions. We regard it as clear that the appellants have shown no enforceable title, and without a title a recovery by them is legally impossible."

Counsel for appellant claim that the case of *Ewing* v. *Wilson, supra*, is not well decided, and that it con-

flicts with *Ewing* v. *Jones, supra*. This claim is evidently unfounded, and the authorities which they cite, under the facts, in *Ewing* v. *Wilson, supra*, and the case at bar do not sustain their contention. The questions involved in *Ewing* v. *Wilson, supra*, were fully and elaborately discussed and considered, and many leading authorities were cited in support of the conclusion reached. The doctrine asserted in that case is evidently sound, and well supported by the authorities, and there is no sufficient reason shown why we should not adhere to the holding therein and accept it as controlling in this cause. The reasons given for the decision in that case completely answer the contentions of appellant in this appeal. In addition to the many authorities cited by Judge Elliott in support of the doctrine affirmed in *Ewing* v. *Wilson*, we cite the following: Pomeroy Eq. Jur., sections 955 and 962; Story's Eq. Jur., section 309; *Rick's Appeal*, 105 Pa. St. 528; *Sears* v. *Shafer*, 6 N. Y. 268; *Prideaux* v. *Lonsdale*, 1 De Gex. J. and S. 433; *Baker* v. *Bradley*, 7 De Gex. M. and G. 595.

Appellant contends that the court erred in refusing to strike out certain statements or declarations of Geo. W. Ewing, Jr. These statements were made by said Ewing to William A. Ewing, a relative, after the return of the former from California, and before the deed of reconveyance was made, and were given in the deposition of William A., which was read in evidence by the appellees. The witness seems to have been acting at the time the statements were made to him as a "go-between" the father and son in regard to having a reconveyance made to the son. The evidence in controversy was, in substance, that George W., Jr., stated that the understanding between him and his father at the time the trust deed was executed was that his father was to reconvey the property to him when he

desired it. These declarations were communicated by William A. to the father, and the latter did not deny but what such was the agreement between him and his son, but at first declined to reconvey for the reason stated that if his son had the property he would waste it. The declarations in controversy seem to have been made as part of the negotiations leading up to the execution of the deed of reconveyance, and in consideration of the fact that they were communicated to the trustee, who did not deny them, they were clearly competent as evidence, under the circumstances, tending to show the reason why the deed of reconveyance was executed by the trustee. But if it could be said that this evidence was incompetent its admission would not result in a reversal, because the appellant had previously on the trial, over the objections of appellees, introduced in evidence declarations made by Geo. W. Ewing, Jr., relative to the trust deed, long after its execution. In this, appellant opened the door to what he now insists is incompetent evidence, hence he is not in a position to complain of his adversary for following through the same door. Elliotts' App. Proc., section 628.

Under the facts in this case, and the law applicable thereto, appellant has no title to the lands which he seeks to recover, and the judgment is affirmed.