## WRAY and Others *v.* WRAY and OTHERS.

DEMURRER.—*Harmless Error.*—There is no available error in sustaining a demurrer to a good paragraph of a complaint, where the same matter is embraced in a remaining paragraph and is fairly submitted thereunder to the jury by the instructions of the court.

FRAUD.—*Weakness of Mind.*—*Undue Influence.*—Where a person is weak in mind by reason of age, or from any other cause, and another takes advantage of such weakness, and by any artifice or cunning, or any *undue influence* he may possess, or any improper practices, induces such person to execute a contract which in the free use and exercise of his deliberate judgment he would not have entered into, such contract will be set aside for *fraud.*

INSANITY.—*Contract.*—*Burden of Proof.*—One who seeks to set aside a contract on the ground of insanity, general or partial, must show that it was the offspring of mental disease.

APPEAL from the Shelby Circuit Court.

GREGORY, J.—The appellants commenced their action against the appellees, to set aside two deeds, executed by one James Wray to Isom Wray, one of the defendants. The complaint is in two paragraphs. The first paragraph charges, that James Wray, deceased, was, in 1853, and for twenty years next previous thereto had been, seized in fee of certain real estate in Shelby county, describing it; that in 1856 he conveyed the land in fee to the defendant Isom

Wray, by deed, a copy of which is made a part of the paragraph; that the deed was without any consideration whatever; that no part of the consideration mentioned in the deed was ever paid; that the land, when it was so conveyed, was of the value of five thousand dollars; that when the deed was made the said James Wray was residing in the family of said Isom, or with said Isom, on the land, and had been so residing with said Isom for six years next preceding the making of the deed; that when the deed was made the said James Wray was seventy years of age, greatly debilitated and enfeebled in body and mind, so much so as to be easily influenced and controlled by those by whom he might be surrounded; that he was, from such weakness of body and mind, unfit to take care of or manage his property; that, by the means of undue acts and practices, and improper and undue influence exercised by said Isom over the said James Wray, he, said Isom, wrongfully and improperly, and to the injury of the plaintiffs and others of said defendants, influenced, induced, and persuaded the said James Wray to make to him, the said Isom, the deed of conveyance; that the said James Wray, in executing it, was, in fact, under improper restraint, and under improper influences from said acts, practices, and influences of said Isom Wray; that James Wray died in October, 1865, leaving him surviving Hardy Wray, Wiley Wray, Cherry Nail, Jordan Wray, Thomas Wray, Lucinda Shull, Tempy L. Howard, Isom Wray, Lavina Cobler, Charles W. Wray, his children, and Maria Wray, his widow, his only heirs-at-law, who are made either plaintiffs or defendants to the action.

The second paragraph charges the making by James Wray to Isom, two deeds for the land, the first on the 1st of August, 1853, and the other on the 26th of December, 1856, and contains, substantially, the same averments as to each deed as the first paragraph contains as to the last deed, with this addition, that at the time of the making of said deeds by said James Wray, he was not of a sound and disposing mind and memory, but was of unsound mind and

incapable of understanding and comprehending the nature, character, purport, and full effect of said deeds of convey- ance.

A demurrer was sustained to the first paragraph, and overruled as to the second.

The defendants answered by the general denial, and Isom answered specially, denying the fraud and unsoundness of mind, and setting up the consideration of the deeds, and the circumstances under which the same were executed. Reply, the general denial.

The case was tried by a jury.

The court instructed the jury, after stating the issues, as follows: "You will see that there are two grounds upon which the plaintiffs predicate their right to recover in this action; first, that at the time these deeds were executed, the said James Wray was a person of weak and enfeebled mind, and that Isom Wray, by the use of improper influences and restraints, procured their execution—or, in other words, that the deeds were procured by him by fraud; second, that when they were executed the said James Wray was a person of unsound mind; and, to recover in this suit, the plaintiffs must prove either the fraud charged in the complaint, or that James Wray was a person of unsound mind as alleged.

"Then, first, have the plaintiffs proved that these deeds were procured by fraud?

"*Fraud is never presumed, but must be proven; the presumption is, that transactions between parties are fair and legitimate, and whoever seeks to avoid them because of fraud must prove that the fraud was practiced.*

"Nor does the law undertake to measure the intellectual capacities of contracting parties and fix any degree of mental capacity which a party shall be possessed of before he can make a valid and binding contract, or any standard by which his mind shall be measured and to which he must come before he can make a contract; and, therefore, for mere weakness, feebleness of mind, alone, these deeds could

Wray and Others *v.* Wray and Others.

not be set aside. But where a party is weak and enfeebled in mind, by reason of age, or from any other cause, and another takes advantage of such weakness, and by any artifice, or cunning, or undue influence he may possess, or by any improper practices, induces such person to execute a contract which in the free use and exercise of his deliberate judgment he would not have entered into, such a contract would be set aside for fraud.

"It is not sufficient, therefore, for the plaintiffs in this case to prove simply that James Wray was a person of feeble intellect, a man of weak understanding; but they must go further, and prove that the defendant Isom took advantage of the condition of his mind and, by use of the means alleged, induced him to execute these conveyances. It is for you to say, therefore, in making your verdict in this cause, whether or not this alleged fraud was practiced. You are to look into his mental condition, the circumstances by which he was surrounded, the extent of his estate in comparison with the amount of property conveyed by these deeds, the persons with whom he most associated, the opportunities the defendant Isom had to influence him, and all the acts and conduct of said defendant Isom having any bearing upon these transactions—all of these are proper for your consideration. And so, also, it is proper for you to consider whether or not these conveyances were the result of a purpose which said James Wray had long entertained, formed without any influence exercised over him by the defendant Isom.

"If he had previously, and when there was no such feebleness of mind as is charged in the complaint, formed a determination to convey this same property to Isom, and was not influenced in such determination by said Isom, this would be a circumstance tending to show that the execution of these deeds was his own deliberate act. You are to bear in mind that you are to determine the question, whether or not James Wray, in the execution of these deeds,

exercised his own free, unbiassed, deliberate judgment, or whether, by reason of the undue influence and improper practices of the defendant Isom, he was prevented from exercising his own judgment and induced to execute them: For this purpose you are to consider every part of the evidence which has been brought before you in this cause. If the evidence proves that at the time of the execution of these deeds James Wray was a man of weak and enfeebled mind, and that by reason of the undue influence and improper practices of Isom Wray he was prevented from exercising his own free and deliberate judgment in regard to this matter, the transaction would be fraudulent. But a conveyance thus fraudulently procured may be ratified by the party executing it; and if after its execution the restraints and influences by which it was procured were removed, and for a long time after their removal the party acquiesced in the conveyance and permitted him to whom the conveyance was made to occupy and use as his own the premises so conveyed, such acquiescence would be a ratification of the conveyance. But so long as the same influences continued to operate upon his mind, ratification could not be presumed from his failure to commence proceedings to set aside such conveyance.          *          *          *

"Unsoundness of mind is never presumed. Sanity is presumed, and whoever would set aside a deed because of unsoundness of mind of the party executing it must prove such unsoundness to exist. It therefore devolves upon the plaintiffs to prove that James Wray, at the time he executed these deeds, was a person of unsound mind. Unsoundness of mind is when there is an essential privation of the reasoning faculties; or when a person is incapable of understanding and acting with discretion in the ordinary affairs of life, such person is of unsound mind. A deed made by such a person will be set aside for want of mental capacity to execute it. The question, then, upon this branch of the case is, has it been shown that James Wray, when he executed these deeds, did not possess that degree of mental

capacity that would enable him to understand and act with discretion in the ordinary affairs of life? If it is so proved, they should be set aside. If it is not so proved, he must be presumed sane, and the deeds sustained. For the purpose of determining his mental condition, you must resort to the evidence. The age of James Wray when he executed these conveyances, the property he was possessed of, the manner in which he disposed of it, the consideration received, all his acts and conduct, and all the circumstances that have been brought to your knowledge by the evidence, must be duly weighed and considered by you. So, too, the opinions of witnesses as to his mental capacity are to be considered and weighed by you. Those witnesses who are not experts have given the facts upon which their opinions have been given. You will give their testimony such weight as you think the facts they have given would warrant. You will likewise consider the opinions expressed by medical men, experts, as to the sanity or insanity of said James Wray. From all this evidence that has been submitted to you, it is for you to say whether or not it proves him to have been a person of unsound mind when these deeds were executed. It is not necessary to prove him totally insane, that is, of unsound mind as to all subjects; a man may be sane upon some subjects and of unsound mind upon others. He may be sane upon all other subjects, and yet afflicted with a delusion upon one which would amount to insanity as to that one. An insane delusion exists when a person conceives something extravagant to exist which has, in fact, no existence, and he is incapable of being reasoned out of this false belief. Such a delusion is partial insanity, and a deed which is the offspring of such a delusion is invalid, and would be set aside. If James Wray conceived a state of facts to exist which had no existence, in fact, as to the manner in which he had been disposing of his property, and persisted in believing it, notwithstanding all the facts were within his own knowledge, and he was incapable of being reasoned out of this false conception, this would be an in-

sane delusion; and if, acting under such a delusion and influenced by it, he executed these deeds, they would be invalid, and should be set aside. You will not understand that a deed executed by a father to a son is to be set aside because he may not have made an equal distribution of his property among his children. If his mind is sound, he may make such disposition of his property as he sees proper. He may divide it equally or unequally, as seems to him best. It is only when his mental faculties have become impaired to such a degree that he is incapable of understanding and acting with discretion in relation to the ordinary affairs of life, or he is afflicted with an insane delusion which prevents him from comprehending or acting with discretion in relation to the matter that is the subject of this act, that his act is invalid."

The evidence, which is in the record, shows that Isom Wray, at the time the first deed was executed, was residing with his father, the grantor, as a member of his family; that from that time up to and at the time of the execution of the last deed, the grantor, James Wray, under a written agreement, made at the time the deed was executed, occupied a specified portion of the dwelling-house, with certain stipulated privileges in the out-buildings; and that Isom Wray occupied, with his wife and family, the residue of the land conveyed, rendering to his father a given quantity of corn and wheat.

The jury found a general verdict for the defendants, and, in answer to interrogatories, said, that James Wray when he executed the deeds was of sound mind; and that Isom Wray did not exercise over him any "undue influence."

A motion for a new trial was overruled. The questions made by counsel arise on sustaining the demurrer to the first paragraph of the complaint, and on the instructions given and certains instructions asked by the plaintiffs and refused by the court.

There was no available error in sustaining the demurrer.

The same matter was embraced in the second paragraph

of the complaint, and was fairly submitted to the jury by the instructions of the court. We do not wish to be understood, however, as holding that the paragraph to which the demurrer was sustained is good. To say the least, it is not a good specimen of pleading.

It is claimed in argument that the instructions of the court to the jury on the first branch of the case did not fairly present the law. We think otherwise. The two objections taken to the instructions as to undue influence are fully answered by the instructions themselves.

It is claimed that the court ought not to have put it on the ground of fraud, and that the court ought to have confined this issue to " undue influence." The court told the jury, that " where a party is weak and enfeebled in mind by reason of age, or from any other cause, and another takes advantage of such weakness, and by any artifice, or cunning, or ' undue influence' he may possess,. or by any improper practices, induces such person to execute a contract which in the free use and exercise of his deliberate judgment he would not have entered into, such a contract would be set aside for fraud." With such an instruction before them, the jury could not have been misled in passing upon the case made by the pleadings.

The relation sustained by the grantee to the grantor was not such as to give the former a controlling or very strong influence over the conduct of the latter. James Wray was at no time in the condition of dependence upon his son Isom; but, on the contrary, the latter, at the time of the execution of the first deed, was dependent on the former. At the time the last deed was executed, each had his rights defined by agreement, reduced to writing, about which there could be no mistake. Therefore, *Sears* v. *Shafer*, 6 N. Y. 268, and the other cases cited by the appellants' counsel, have no bearing on the case at bar.

On the question of unsoundness of mind, it is claimed by the counsel of the appellants, that the burden of proof

was improperly placed upon the plaintiffs.  The court was asked by the appellants, and refused, to instruct the jury, that, "if the plaintiffs have proved that old James Wray, when he made the deeds, was of unsound mind, it throws on the defendant Isom Wray the burden of proving that, notwithstanding that unsoundness, he posssessed sufficient mental capacity to transact, with understanding and discretion, the ordinary affairs of life.  In the absence of such proof, the plaintiffs will be entitled to recover on the ground of unsoundness of mind."

The court had charged the jury, that "it is not necessary to prove the grantor totally insane, that is, of unsound mind as to all subjects; a man may be sane upon some subjects, and of unsound mind upon others.  He may be sane upon all other subjects, and yet afflicted with a delusion upon one which would amount to insanity as to that one. An insane delusion exists when a person conceives something extravagant to exist, which has, in fact, no existence, and he is incapable of being reasoned out of this false belief.  Such a delusion is partial insanity, and a deed which is the offspring of such a delusion is invalid, and would be set aside."

In view of the evidence, the court committed no error in refusing the instruction as asked, and in giving the instructions on this branch of the case.

The court clearly drew the distinction between general and partial insanity, and correctly left it to the jury, as a question of fact, whether the deeds were the offspring of an insane delusion.

One who seeks to set aside a contract on the ground of insanity must show that it was the offspring of mental disease.

The court committed an error in instructing the jury as to ratification; that instruction was without the issues; but this error is cured by the finding of the jury in answer to interrogatories.

We have looked through the evidence, and are entirely satisfied with the finding of the jury.

Judgment affirmed, with costs.

*S. Major*, for appellants.

*B. F. Davis, E. H. Davis*, and *C. Wright*, for appellees.