Nicholson, C. J.,
delivered the opinion of the court.
Maloney files bis attachment bill to enforce payment of claims against William N. Bewley, by the sale of his interest in a tract of land or put of the notes executed for the land by Michael Myers, to whom J. M. Bewley had conveyed it.
Myers filed his answer and cross-bill in which he insisted that his purchase of J. M. Bewley was fair and valid, and that the claim set up to it by Dar-thula Bewley and her children was invalid because the deed of gift to them by J. M. Bewley was never delivered, and if it was, Darthula assented to the sale of the same land to Myers by J. M. Bewley.
Darthula Bewley and children answer the original bill of Maloney, claiming the land by deed of gift from J. M. Bewley and that Myers and her husband W. N. Bewley procured J. M. Bewley to cancel the deed of gift, and to convey the land to Myers. *644 They file their cross-bill to have their mutilated deed of ^ift set up, and their title declared and possession given to them.
These several bills and cross-bills were answered, and proof taken, and upon the hearing, the Chancellor held that Myers got no title by his purchase; that Darthula Bewley and her children were entitled to the land, and that Maloney could have no relief, either against the land or Myers’ notes, but was On-titled to judgment against W. N. Bewley and to the proceeds of the personal property of W. N. Bewley attached and sold. Myers and Maloney have appealed.
It appe'ars that J. M. Bewley sold the land in controversy to his son W. N. Bewley, in 1856 or 1857, for $6,000 or $7,000, and executed to him his bond for title and taking his notes for the purchase money, W. N. Bewley went into possession, held the land until 1867 and made valuable improvements on it worth from $1,500 to $2,500. The proof is not satisfactory as to the amount of payments made on his notes, but it is clear that as much as $2,000 was paid.
Shortly before Maloney filed his attachment bill, J. M. Bewley, who was then in bad health and rapidly declining, had a settlement with W. N. Bew-ley, in which it was found upon calculation, that the payments made by W. N. Bewley did not exceed the interest on the purchase money notes, and that besides these, J. M. Bewley held other notes on W. N. Bewley amounting to about $1,5(0 or $2,000. Upon this settlement W. N. Bewley surrendered his bond *645 for title, and J. M. Bewley gave up to him all the purchase money notes and the others, amounting in all, after deducting the payments made, to about $8,000 or $9,000. Having in this way obtained the equitable title of W. N. Bewley, his father J. M. Bewley at the same time executed a deed of gift for the land to the wife of W. H. Bewley, to-wit, Dar-thula Bewley and their children, by name, but upon the requirement that W. N. Bewley -and his wife should execute their note to him for $2,000 payable three years after his death. The deed of gift was accordingly drawn and signed, and witnessed and delivered to "VV. 1ST. Bewley with directions to deliver it to his wife, after the note of $2,000, which was then written, should be executed. W. N. Bewley took possession of the deed, and went to his wife who was not present, but at home some ten or twelve miles distant, and procured her to sign the note, but retained possession of the deed. As soon as this deed of gift was thus executed W. In. Bewley commenced negotiation with Myers for the' sale of the land. Myers was informed that J. M. Bewley had executed the deed of gift, but either because he thought it had never been delivered, or because he was satisfied that Darthula Bewley was willing that he should purchase it, and that if he bought with her consent his title would be good, he agreed upon terms of purchase with W. 1ST. Bewley. Afterward he consummated the trade with J. M. Bewley, who had obtained possession of the deed of gift from W. IT. Bewley, and after tearing off his signature, ex *646 ecuted a deed .for the land to Myers for $10,000, taking $8,000 of the notes payable to himself for the benefit of Darthula Bewley and her children, and $2,000 payable to himself for his own benefit. With-' in a day or two after this conveyance to Myers, the complainant Maloney filed his original attachment bill, attacking the several conveyances as fraudulent and void, and then followed the answers and cross-bills by Myers and Darthula Bewley, already referred to.
This general statement of the case is sufficient to-present the questions arising in the case, on which we will proceed to state our conclusions.
1. It is insisted fof Maloney and Myers that the deed of gift was never so delivered as to be operative in vesting the title in the wife and children of W. NV Bewley. The proof of Leiper, who was the draughts-man, is that “after it was signed and witnessed Jacob M. Bewley, sr., handed it W. N. Bewley, and requested him to deliver it to his wife Darthula L. Bewley.” He states further, “as a part of the consideration of said conveyance the said Darthula L. Bewley was to execute a note for $2,000 in favor of said Jacob M. Bewley, sr., and the said W. N. Bew-ley (her husband) was to sign the note also.” Witness, at the request of William N. Bewley, wrote the note which the said William was to take to his wife for her signature. This- note was executed by W. N. Bewley and his wife, and is in the record dated February 1, 1867. The deed was shown by the same witness to have been executed on January 28, 1867. If W. N. Bewley, when he procured his wife *647 to execute the note, informed her why she was required to sign so large a note, as we think altogether probable, although the proof leaves this in doubt, then there could be no question as to the delivery being complete. But whether she knew or not the purpose of the note, the deed was- delivered to her husband with direction to deliver it to her, and as the deed was for the benefit of his wife and children the presumption would arise that the deed was accepted, and that the delivery was sufficient. As held in the case of Kirkman v. Bank of America, 2 Col., 402, if the eifect of the instrument is beneficial to the party to whom it is made, as for -example, if it be an absolute conveyance of land in fee simple,' his assent to it will be presumed. Here the conveyance is of the fee simple title and to the wife and children of the agent directed to deliver it. The delivery of the deed was therefore sufficient.
2. It is argued for Myers that if the delivery of the deed of gift was sufficient, still his title from J. M. Bewley is good, because Darthula Bewley assented to the sale. Whether she assented with a full understanding that the title had vested in her and her children, is by no means clearly made out. We infer from all the evidence on this question that her assent was given with reluctance in deference to the wishes of her husband, and because she apprehended that it would be dangerous for him to remain. It matters but little how this is. The title was vested in her and her children and no assent that she could give could authorize J. M. Bewley to divest them of the *648 title and vest it in Myers. The doctrine that a married woman is not exempted from the consequences of her fraud by reason of her coverture, has no application to this case. It follows, that whether she assented or not, J. M. Bewley had no right to convey her title and that of her children to Myers. We see no evidence that fixes positive fraud upon Myers in making the purchase, but his purchase was made under circumstances which deprive him of all pretense to the benefits of an innocent purchaser.
3. But it is insisted for Maloney that J. M. Bew-ley was not so vested with the equitable as well as the legal title to the land as to enable him to convey a perfect title to Darthula Bewley and her children. The conveyance to her and her children upon its face, is for love and affection, they cannot therefore protect the.mselves under the plea of innocent purchasers for a valuable consideration. They take the land subject to such equities as existed against it in the hands of J. M. Bewley.
It is clear that W. N. Bewley had an equitable interest in the land by reason of his title-bond and the payments he had made, and for the value of permanent improvements. It is well settled that as between J. M. Bewley and W. N. Bewley a rescission of their contract could be effectually made by a surrender or cancellation of the title-bond so as to reinvest J. M. Bewley with the equitable title of W. N. Bewley. It is also well settled that if J. M. Bewley was guilty of no fraud in rescinding his contract with W. N. Bewley and getting in the equitable *649 title, the creditors of W. N. Bewley have no right to complain. He would, in that case, be only-availing himself of a legitimate advantage which his position as holder of the legal title gives him over other creditors.
But if in availing himself of his right to protect his own interests, he is actuated by the fraudulent purpose of defeating the just claims of other creditors of W. 1ST. Bewley, then the fraud annuls the contract of rescission and he takes the equitable title subject to the lien fixed upon it by the attaching creditor. 4 Sneed, 698 ; 2 Head, 46 ; 1 Col., 186.
The question then arises, did J. M. Bewley rescind his contract with W. N. Bewley and reinvest himself with his equitable title for the sole purpose of protecting and promoting his own interests, or was he influenced by the additional purpose of defeating the creditors of W. N. Bewley and of being enabled so to appropriate the land as to give to his son the use and benefit, of it, but beyond the reach of his creditors?
The evidence in the case forces us to the conclusion that one prominent element in the transaction between J. M. Bewley and W. N. Bewley was to defeat the creditors of W. N. Bewley in any effort to reach and subject his equitable interest in the land. The probability is, acccording to the evidence, that the moving inducement in making the settlement was to avoid the apprehended effort of Maloney to subject the equitable interest to his claim. This view is *650 rendered almost certain by the fact that when the •sheriff .came to his house, a few days after the land had been first conveyed to his son’s wife and children and then to Myers, for the purpose of executing the process under Maloney’s bill, J. M. Bewley remarked to the sheriff, that “Maloney was a little too late — the thing was all fixed up — that he had made a deed the day before to Myers.” All the circumstances satisfy us that one object of J. M. Bewley 'was to aid his son in baffling and defeating Maloney’s claim, and to place the title of the land in the wife and children of W. N. Bewley where it would be secure from his creditors. We are therefore of opinion that J. M. Bewley took the equitable interest of W. N. Bewley in the land, subject to the attachment of Maloney, which was levied on it,, and. that the title was vested by him in Darthula Bewley and her children, subject to the same lien. The equitable interest of W. N. Bewley in the land was the amount of the purchase money paid by him at the time the bond for title was given up, and the enhanced value of the land by reason of permanent improvements. As this amount does not satisfactorily appear, nor the amount of Maloney’s claims, these matters will be ascertained upon proper proof and reports.
The result is that Myers’ cross-bill will be dismissed ; his deed from J. M. Bewley declared null and void, and his notes for the purchase money delivered up and cancelled, and he will be held to account for the reasonable value of the rents of the land; the deed of gift from J. M. Bewley io *651 Darthula L. Bewley and her children will be set up and declared to vest in them the title of the land subject to - the lien of Maloney for such amount as shall be ascertained to be due him. Maloney is entitled to have his claim, when ascertained, satisfied out of the proceeds of the sale of the personal property of W. 1ST. Bewley attached," and out of the rents that may be adjudged against Myers, and if there is any excess, that balance to be satisfied out of the land.
Myers will pay the costs incident to his cross-bill in this court and the court below, and the other costs of this court and the court below will be paid out of the rents of the land.